

SO ORDERED,

**Judge Edward Ellington**
**United States Bankruptcy Judge**
**Date Signed: March 10, 2017**

The Order of the Court is set forth below. The docket reflects the date entered.

# IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:                                                              CHAPTER 7

**MATTHEW J. PELLERIN**                               CASE NO. 1100857EE

**ROBERT BUCHANAN AND**
**WESTWOOD SQUARE LIMITED**
**PARTNERSHIP**

**V.**                                              ADVERSARY NO. 1100121EE

**MATTHEW J. PELLERIN**

Hon. George Nicols                        Attorney for Robert Buchanan and
P. O. Box 12282                         Westwood Square Limited Partnership
Jackson, MS 39205-0750
gcnicols@gmail.com

Hon. John G. Holaday                              Attorney for the Debtor
P. O. Box 321406
Flowood, MS 39232-1406
john@msattys.com

Edward Ellington, Judge

## MEMORANDUM OPINION ON *DEFENDANT MATTHEW J. PELLERIN'S MOTION FOR SUMMARY JUDGMENT*

**THIS MATTER** came before the Court on the *Defendant Matthew J. Pellerin's Motion for Summary Judgment* (Adv. Dkt. #45) and *Response to Defendant Matthew Pellerin's Motion for Summary Judgment* (Adv. Dkt. #48) filed by Robert Buchanan and Westwood Square Limited Partnership. Having considered same, and the briefs filed by the parties, the Court finds that the *Defendant Matthew J. Pellerin's Motion for Summary Judgment* (Adv. Dkt. #45) is well taken in part and should be denied in part.

### FINDINGS OF FACT[1]

Douglas G. Broome (Broome) and Matthew J. Pellerin (Debtor) were partners in several businesses in Hattiesburg, Mississippi: Cornerstone Realty Group (Cornerstone);[2] Cornerstone Construction Co., LLC;[3] Cornerstone Home Loans, LLC;[4] a Century 21 real estate agency; and Pancho's Mexican Buffets of Mississippi, LLC.[5] In order for Broome and the Debtor to construct a Pancho's Mexican Buffet Restaurant in Hattiesburg, Mississippi, on or about September 8, 2009, Pancho's Mexican Buffets of Mississippi, LLC (Pancho's) entered into an *Agreement for*

---

[1]The following constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. To the extent any of the following findings of fact are determined to be conclusions of law, they are adopted, and shall be construed and deemed, conclusions of law. To the extent any of the following conclusions of law are determined to be findings of fact, they are adopted, and shall be construed and deemed, as findings of fact.

[2]Debtor has a 49% interest. *Defendant Matthew J. Pellerin's Memorandum in Support of Motion for Summary Judgment,* Adversary No. 1100121EE, Adv. Dkt. #46, p. 2, (April 29, 2016).

[3]Debtor has a 49% interest. *Id.*

[4]Debtor has a 49% interest. *Id.*

[5]Debtor has a 26.6% interest. *Id.*

*Commercial Lease and for Financing of Build-Out*[6] (Build-Out Agreement) with Westwood. Broome, the Debtor and Lindy Ray Tolar (Tolar) signed the Build-Out Agreement on behalf of Pancho's. In the Build-Out Agreement, Pancho's agreed to lease space from Westwood in a building owned by Westwood, the Westwood Square Shopping Center. Further, Westwood agreed to lend Pancho's a total of $360,000.00 to build-out the space for the restaurant. Attached to the Build-Out Agreement is a personal guaranty signed by Broome, the Debtor and Tolar.

As additional collateral for the $360,000.00, on or about October 2, 2009, Broome and the Debtor, on behalf of Cornerstone Construction Co., LLC (Cornerstone Construction) signed an *Assignment of Deed of Trust and Promissory Note and Security Agreement*[7] (Assignment). In the Assignment, Cornerstone Construction assigned a deed of trust it held on approximately 4.16 acres in Lamar County, Mississippi, to Westwood. The deed of trust held by Cornerstone Construction is referred to as the Purvis Porches Deed of Trust.

Over a period of time, Westwood disbursed all of the $360,000.00 to Pancho's, and the build-out of the restaurant was eventually completed. The restaurant opened, but it subsequently closed. Westwood was not repaid any of the $360,000.00.

Broome subsequently filed a petition for relief under Chapter 7[8] of the Bankruptcy Code on March 5, 2011, in the Gulfport Divisional Office of the Southern District of Mississippi. The case was assigned to Judge Katharine M. Samson, and Derek A. Henderson was appointed the Chapter

---

[6]*Complaint Objecting to Dischargeability of Debt or in the Alternative, to the Discharge of Debtor*, Adversary No. 1100121EE, Adv. Dkt. #1, Exhibit B, (Oct. 4, 2011).

[7]*Id.* Exhibit A.

[8]Douglas G. Broome, Case No. 1150528KMS.

7 Trustee.  In his schedules, Broome listed Westwood as a disputed creditor.  Westwood filed a proof of claim in Broome's case in the amount of $395,000.00.

Also on March 5, 2011, the Debtor filed in this Court a petition for relief under Chapter 7 of the Bankruptcy Code which is currently pending before this Court.  Stephen Smith was appointed the Chapter 7 Trustee (Trustee).  In his schedules, the Debtor listed Westwood as a disputed creditor. Westwood filed a proof of claim in the amount of $360,000.00 (Proof of Claim #14-1).

In the Broome case, on September 30, 2011, Westwood and Robert M. Buchanan, Jr. (Buchanan) filed a complaint[9] to determine the dischargeability of its debt pursuant to 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. § 523(a)(2)(B)[10] (Broome Adversary).

In the case at bar, Westwood and Buchanan initiated the above-styled adversary proceeding on October 4, 2011, with the filing of the *Complaint Objecting to Dischargeability of Debt or in the Alternative, to the Discharge of Debtor* (Adv. Dkt #1) (Complaint).  In the Complaint, Westwood and Buchanan objected to the dischargeability of its $360,000.00 debt pursuant to § 523(a)(2)(A), § 523(a)(2)(B), § 523(a)(4), § 523(a)(6), and to the Debtor's discharge pursuant to § 727(a).[11]  The Debtor filed an *Answer and Defenses to Complaint* (Adv. Dkt. #12) (Answer) on January 26, 2012. In his Answer, the Debtor denies Westwood and Buchanan are entitled to any relief.  The Court entered a *Scheduling Order* (Adv. Dkt. #13).

After the scheduling order had run, the Court set the matter for a pre-trial conference in

---

[9]Adversary Proceeding Number 1105047KMS.

[10]Hereafter all code sections refer to the Bankruptcy Code found at Title 11 of the United States Code unless specifically noted otherwise.

[11]On May 7, 2014, an *Order Dismissing Count* (Adv. Dkt. #33) was entered dismissing Westwood and Buchanan's request to deny the Debtor a discharge pursuant to § 727(a).

October of 2012.  At the pre-trial conference, the parties informed the Court that Judge Samson had set the trial on the Broome Adversary for January of 2013.  The parties agreed that since the facts and allegations contained in both adversaries were almost identical, this Court would wait to see the outcome of the Broome Adversary before moving forward.

Judge Samson held a three-day trial on the adversary proceeding, and on January 8, 2014, entered a *Memorandum Opinion*[12] (Broome Opinion) in the Broome Adversary.  In the Broome Opinion, Judge Samson found that:

> 1.  Buchanan is a general partner in Westwood.  Buchanan was not, however, a signatory to the $360,000.00 note and guaranty signed by Broome.  Therefore, Buchanan was not a creditor of Broome and did not have standing to raise a claim under § 523(a).[13]
>
> 2.  Westwood failed to meet its burden under § 523(a)(2)(B).  Section 523(a)(2)(B) only applies to written statements respecting a debtor's financial condition.  Westwood failed to show where Broome gave Westwood "'a materially false and intentionally deceptive written statement of financial condition upon which the creditor reasonably relied.'"[14]
>
> 3.  Westwood failed to meet its burden under § 523(a)(2)(A) as to Broome's failure to disclose the cancellation of the Purvis Porches Deed of Trust.[15]
>
> 4.  Westwood failed to meet its burden under § 523(a)(2)(A) "to prove justifiable or actual reliance relating to representations about working capital."[16]
>
> 5.  Westwood met its burden under § 523(a)(2)(A) to prove that Broome falsely

---

[12]*Westwood Square Limited Partnership & Robert M. Buchanan, Jr. v. Douglas G. Broome (In re Broome),* Adv. Case No. 1105047KMS, 2014 WL 61235 (Bankr. S.D. Miss. Jan. 8, 2014).

[13]*Id.* at *1 n.12.

[14]*Id.* at *5 (quoting *Bandi v. Becnel (In re Bandi)*, 683 F.3d 671, 674-75 (5th Cir. 2012)).

[15]*Id.* at *7.

[16]*Id.* at *8.

represented to Westwood that the loan proceeds would be used for the purchase of equipment and for the build-out of the restaurant space. Judge Samson found that Westwood met all four elements of actual fraud. As for the fifth element, Judge Samson awarded damages in the amount of $102,024.72, and found that the $102,024.72 was nondischargeable pursuant to § 523(a)(2)(A).[17]

The Broome Opinion was not appealed and became a final judgment.

Over the next couple of years, several hearings were held on the adversary.[18] An *Amended Scheduling Order* (Adv. Dkt. #43) was entered on December 15, 2015.

The Debtor filed *Defendant Matthew J. Pellerin's Motion for Summary Judgment* (Adv. Dkt. #45) (Motion) on April 29, 2016. In the Motion, the Debtor "requests that the Court consider the exhibits and testimony presented by [Westwood] and [Broome] in the trial of the [Broome Adversary]."[19] The Debtor did not, however, supply the Court with copies of the exhibits or transcript from the trial of the Broome Adversary.

In the Motion, the Debtor alleges that he is entitled to summary judgment in his favor and "respectfully requests that the Court adopt the rulings of the Honorable Katherine *(sic)* M. Samson dismissing numerous claims of [Westwood and Buchanan] in her Memorandum Opinion in the

---

[17]*Id.* at *13.

[18]One reason for the delay in moving forward on this adversary proceeding was because the Debtor and Broome had a pending malpractice lawsuit against their former attorneys (Adversary No. 1305013KMS and Adversary No. 1300016EE). The parties were waiting to see if the malpractice claims were successful. On July 19, 2016, an order was entered approving a settlement of the Debtor and Broome's malpractice lawsuit. While the Trustee did recover funds for the Debtor's bankruptcy estate, there will not be a surplus. Therefore, the Debtor will not receive any proceeds from the malpractice lawsuit.

[19]*Defendant Matthew J. Pellerin's Motion for Summary Judgment,* Adversary No. 1100121EE, Adv. Dkt. #45, p. 1, (April 29, 2016).

Broome adversary proceeding."[20]   The Debtor also filed *Defendant Matthew J. Pellerin's Memorandum in Support of Motion for Summary Judgment* (Adv. Dkt. #46) (Debtor's Brief) in support of his Motion.   The Debtor listed material facts in support of his Motion and states that "[s]ome of these facts are taken from the Memorandum Opinion of Judge Katherine *(sic)* M. Samson."[21]

In the *Response to Defendant Matthew Pellerin's Motion for Summary Judgment* (Answer), Westwood and Buchanan deny that the Debtor is entitled to summary judgment.  In the *Plaintiffs' Memorandum in Support of the Response to Defendant Matthew Pellerin's Motion for Summary Judgment* (Adv. Dkt. #49) (Westwood's Brief), Westwood and Buchanan dispute some of the Debtor's list of material facts.  Specifically, Westwood and Buchanan dispute paragraphs seven (7) and eight (8) in which the Debtor states that Broome had the authority to make decisions, but that the Debtor did not have any independent decision making authority nor did he have the authority or control over how the loan proceeds were used.  Westwood and Buchanan also dispute paragraph ten (10) where the Debtor states that he did not make any representations to Westwood regarding working capital or how the loan proceeds would be used.  Other than objecting to these three paragraphs, Westwood and Buchanan do not state any objections to the other material facts listed by the Debtor.

After the final brief was filed, the Court took the matter under advisement.

---

[20]*Id.* at 2.

[21]*Defendant Matthew J. Pellerin's Memorandum in Support of Motion for Summary Judgment,* Adversary No. 1100121EE, Adv. Dkt. #46, p. 1, n.1 (April 29, 2016).

## CONCLUSIONS OF LAW

### I.  Jurisdiction

This Court has jurisdiction of the subject matter and of the parties to this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157.  This is a core proceeding as defined in 28 U.S.C. § 157(b)(1) and (2)(I).

### II.  Summary Judgment Standards

Rule 56 of the Federal Rules of Civil Procedure,[22] as amended effective December 1, 2010,[23] provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  When considering a motion for summary judgment, "the court does not weigh the evidence to determine the truth of the matter asserted but simply determines whether a genuine issue for trial exists, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.' *Anderson v. Liberty Lobby, Inc.,* 106 S. Ct. 2505, 2510 (1986)." *Newton v. Bank of America (In re Greene),* 2011 WL 864971, at *4 (Bankr. E.D. Tenn. March 11, 2011).

"The moving party bears the burden of showing the . . . court that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)." *Hart v. Hairston,* 343 F.3d 762, 764 (5th Cir. 2003).

---

[22]Federal Rule of Civil Procedure 56 is made applicable to bankruptcy proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056.

[23]The Notes of Advisory Committee to the 2010 amendments state that the standard for granting a motion for summary judgment has not changed, that is, there must be no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law.  Further, "[t]he amendments will not affect continuing development of the decisional law construing and applying these phrases."

Once a motion for summary judgment is pled and properly supported, the burden shifts to the non-moving party to prove that there are genuine disputes as to material facts by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials."[24] Or the non-moving party may "show[ ] that the materials cited do not establish the absence . . . of a genuine dispute."[25] When proving that there are genuine disputes as to material facts, the non-moving party cannot rely "solely on allegations or denials contained in the pleadings or 'mere scintilla of evidence in support of the nonmoving party will not be sufficient.' *Nye v. CSX Transp., Inc.,* 437 F. 3d 556, 563 (6th Cir. 2006); *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986)." *Newton,* 2011 WL 864971, at *4. "[T]he nonmovant must submit or identify evidence in the record to show the existence of a genuine issue of material fact as to each element of the cause of action." *Malacara v. Garber,* 353 F.3d 393, 404 (5th Cir. 2003). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita,* 106 S. Ct. at 1356 (citations omitted).

When considering a motion for summary judgment, the court must view the pleadings and evidentiary material, and the reasonable inferences to be drawn therefrom, in the light most favorable to the non-moving party, and the motion should be granted only where there is no genuine issue of material fact. *Thatcher v. Brennan*, 657 F. Supp. 6, 7 (S.D. Miss. 1986), *aff'd*, 816 F.2d 675 (5th Cir. 1987)(citing *Walker v. U-Haul Co. of Miss.*, 734 F.2d 1068, 1070-71 (5th Cir. 1984)); *See also*

---

[24]Fed. R. Bankr. P. 7056(c)(1)(A).

[25]Fed. R. Bankr. P. 7056(c)(1)(B).

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106 S. Ct. 1348, 1356-57, 89 L. Ed. 2d 538, 553 (1986). The court must decide whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52, 106 S. Ct. 2502, 2512, 91 L. Ed. 2d. 202 (1986).

## II. Application to the Case at Bar

As noted, Westwood and Buchanan request the Court to declare the $360,000.00 debt nondischargeable pursuant to § 523(a)(2)(A), § 523(a)(2)(B), § 523(a)(4), and § 523(a)(6). In order for the Debtor's Motion to be granted, the Debtor must prove that a genuine issue of material fact does not exist as to each essential element under § 523(a)(2)(A), § 523(a)(2)(B), § 523(a)(4), and § 523(a)(6) and that he is entitled to a judgment as a matter of law.

### A.  Issue Preclusion

As stated previously, in the Motion, the Debtor requests that the Court adopt the rulings of Judge Samson in the Broome Opinion which favor the Debtor. In the Debtor's Brief, however, the Debtor argues that issue preclusion bars Westwood from relitigating the claims in the instant case. The Court first points out that the Debtor cannot on one hand ask the Court to rule in the Debtor's favor by applying Judge Samson's findings, and then turn around and tell the Court that Westwood is barred by issue preclusion from relitigating its claim of the nondischargeability of its debt. If issue preclusion applies, it would apply to both parties and not only to Westwood.

The Court finds that issue preclusion does not apply in this case. For the purpose of nondischargeability, issue preclusion applies in bankruptcy court only if "the first court has made specific, subordinate, factual findings on the identical dischargeability issue in question—that is, an

issue which encompasses the same *prima facie* elements as the bankruptcy issue—and the facts supporting the court's findings are discernible from that court's record." *Dennis v. Dennis (In re Dennis),* 25 F.3d 274, 278 (5th Cir. 1994), *cert. denied,* 513 U.S. 1081, 115 S. Ct. 732, 130 L. Ed. 2d. 636 (1995).

Judge Samson does make specific factual findings regarding the amount of money Broome, Tolar, and the Debtor improperly spent ($102,024.72) and which she found to be nondischargeable as to Broome pursuant to § 523(a)(2)(A).[26]   The Debtor was not, however, a party to the Broome Adversary.  The Debtor was called as a witness at the trial, but the Debtor was not a named party. Consequently, issue preclusion does not apply.

### B.  Buchanan's Standing

As an initial procedural matter, the Court will address the standing of Buchanan.  The Court agrees with Judge Samson's finding in the Broome Opinion that while Buchanan is a limited partner in Westwood,[27] Buchanan was not, however, a signatory in his individual capacity to the $360,000.00 promissory note and the guaranty signed by the Debtor.  Consequently, Buchanan is not a creditor of the Debtor and lacks standing to raise a claim under any subsection of § 523(a). Therefore, summary judgment will be granted in favor of the Debtor as to any alleged claims of Buchanan against the Debtor.

### C.  § 523(a)(4)

In  Westwood's  Brief,  Westwood  concede  that  the  grounds  for  holding  the  debt

---

[26]*In re Broome,* 2014 WL 61235, at *13.

[27]*See Complaint Objecting to Dischargeability of Debt or in the Alternative, to the Discharge of Debtor*, Exhibit B, *Agreement for Commercial Lease and for Financing of Build-Out,* Adversary No. 1100121EE, Adv. Dkt. #1-2, unnumbered p. 4 of 5 (October 4, 2011).

nondischargeable pursuant to § 523(a)(4) do not exist.[28]  Consequently, summary judgment will be

granted in favor of the Debtor as to § 523(a)(4).  The Court will address the other grounds separately.

### D. Section 523(a)(2)(B)

Section 523(a)(2)(B) provides:

(a) A discharge under section 727 . . . of this title does not discharge an individual
debtor from any debt–

.  .  .  .

    (2) for money, property, services, or an extension, renewal, or
refinancing of credit, to the extent obtained by–

.  .  .  .

    (B) use of a statement in writing--

        (i) that is materially false;

        (ii) respecting the debtor's or an
insider's financial condition;

        (iii) on which the creditor to whom the
debtor is liable for such money,
property, services, or credit reasonably
relied; and

        (iv) that the debtor caused to be made
or published with intent to deceive;

11 U.S.C. § 523(a)(2)(B).

In *Bandi v. Becnel (In re Bandi),* 683 F.3d 671 (5th Cir. 2012), the Court of Appeals for the

Fifth Circuit addressed the differences between § 523(a)(2)(A) and § 523(a)(2)(B):

Some debts for value obtained by means of a fraudulent statement are dischargeable

---

[28]*Plaintiffs' Memorandum in Support of the Response to Defendant Matthew Pellerin's Motion
for Summary Judgment,* Adv. Dkt. #49, unnumbered page 13 of 15 (May 23, 2016).

under § 523(a)(2), and others are not. Debt for property or other value obtained by fraud is broadly rendered nondischargeable by § 523(a)(2)(A), but that subsection carves out certain debt that follows a transfer of value or extension of credit obtained by "a statement" regarding the debtor's "financial condition" and makes that debt dischargeable. However, certain other debt that follows a transfer of value or extension of credit obtained by "a statement" regarding the debtor's "financial condition" is rendered nondischargeable by § 523(a)(2)(B). Under this subsection, if a statement respecting the debtor's or an insider's financial condition is in writing, materially false, reasonably relied upon by the creditor, and the debtor made the statement with intent to deceive, the debt obtained by the fraud is not discharged.

> . . . .

The Supreme Court has described these two subsections as "two close statutory companions barring discharge," the first of which pertains to fraud "not going to financial condition" and the second of which pertains to "a materially false and intentionally deceptive written statement of financial condition upon which the creditor reasonably relied."

*In re Bandi*, 683 F.3d at 674–75 (citations and footnotes omitted).

In order to prevail under § 523(a)(2)(B), Westwood must show that the Debtor obtained the funds from Westwood by use of a "materially false and intentionally deceptive written statement of financial condition upon which the creditor reasonable relied."[29] The Fifth Circuit held that the term *financial condition* should be defined by "terms commonly understood in commercial usage rather than a broadly descriptive phrase intended to capture any and all misrepresentations that pertain in some way to specific assets or liabilities of the debtor. . . .It means the general overall financial condition of an. . .individual. . .the overall value of property and income as compared to debt and liabilities." *In re Bandi,* 683 F.3d at 676. Westwood bears the burden of proving each of the four elements by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 287–88, 111 S.Ct. 654, 112 L.Ed. 2d 755 (1991); *Gen. Elec. Capital Corp. v. Acosta (In re Acosta)*, 406 F.3d 367, 372

---

[29]*Field v. Mans,* 516 U.S. 59, 66, 116 S.Ct. 437, 133 L.Ed. 2d 351 (1995).

(5th Cir.2005).

As in the Broome Adversary,[30] Westwood has failed to show where the Debtor gave Westwood "a materially false and intentionally deceptive written statement of financial condition upon which the creditor reasonably relied."[31] Contrary to Westwood's assertions, neither the Build-Out Agreement nor the attached guaranty contain any statements which pertain to the Debtor's overall financial condition. The Build-Out Agreement and guaranty do not contain any statements regarding the Debtor's income, expenses and liabilities nor is there any information which relates to the income, expenses and liabilities of the various companies the Debtor held an interest in.

Neither does Westwood identify any other writings it alleges contain false statements by the Debtor upon which it relied. While Westwood attaches copies of pages from what the Court presumes is the transcript from the trial held before Judge Samson, any such statements by the Debtor are not a *writing* which would be actionable under § 523(a)(2)(B).

Consequently, the Court finds that there are no disputes as to any material facts as it relates to § 523(a)(2)(B) because based on Westwood's Complaint, Response and Brief, there is no factual basis under which the debt could be declared nondischargeable under § 523(a)(2)(B). Westwood's request to have the debt declared nondischargeable pursuant to § 523(a)(2)(B) fails as a matter of law. Therefore, summary judgment should be granted in favor of the Debtor as to § 523(a)(2)(B).

---

[30]In the Broome Opinion, Judge Samson found that Westwood failed to meet its burden under § 523(a)(2)(B). Citing *Bandi,* Judge Samson found that § 523(a)(2)(B) only applies to statements respecting a debtor's financial condition, and Westwood failed to show where Broome gave Westwood "a materially false and intentionally deceptive written statement of financial condition upon which the creditor reasonably relied." *Field,* 516 U.S. at 66.

[31]*Field,* 516 U.S. at 66.

## E.  § 523(a)(6)

Under § 523(a)(6), a debt is excepted from discharge as follows:

(a) A discharge under section 727 . . . of this title does not discharge an individual
debtor from any debt–

. . . .

(6) for willful and malicious injury by the debtor to another entity or
to the property of another entity;

11 U.S.C. § 523(a)(6).  In order to prevail under § 523(a)(6), a party must prove that the debt is

nondischargeable by a preponderance of the evidence.  *Grogan v. Garner,* 498 U.S. 279, 291, 111

S. Ct. 654, 112 L. Ed. 2d 755 (1991).

In *Kawaauhau v. Geiger,* 523 U.S. 57, 61, 118 S. Ct. 974, 140 L. Ed. 2d 90 (1998), the

United States Supreme Court stated that "[t]he word 'willful' in (a)(6) modifies the word 'injury,'

indicating that nondischargeability takes a deliberate or intentional *injury,* not merely a deliberate

or intentional *act* that leads to injury."  Further, "debts arising from recklessly or negligently inflicted

injuries do not fall within the compass of § 523(a)(6)."  *Id.* at 64.  The Supreme Court reiterated the

policy considerations for confining § 523(a)(6) to circumstances that benefit "a typically more honest

creditor."  *Bullock v. BankChampaign,* 2013 WL 1942393, at *6 (May 13, 2013).

In *Miller v. J.D. Abrams Inc. (In re Miller),* 156 F.3d 598 (5th Cir. 1998), the Court of

Appeals for the Fifth Circuit extended *Kawaauhau's* reasoning.  The court in *Miller* refined the

definition of willful and malicious and held that "either objective substantial certainty [of injury] or

subjective motive [to injure] meets the Supreme Court's definition of 'willful. . .injury' in

§ 536(a)(6)."  *Miller*, 156 F.3d at 603.  The *Miller* court rejected the definition of *malicious* to mean

an act without just cause or excuse.  Rather, the Fifth Circuit adopted an "implied malice standard"

and held that *malicious* was an act done with the "actual intent to cause injury." *Id.* at 606 (citation omitted).

Several years later, the Fifth Circuit further addressed and refined its definition for willful and malicious in § 523(a)(6) in *Williams v. IBEW Local 520 (In re Williams)*, 337 F.3d 504 (5th Cir. 2003):

> The test for willful and malicious injury under Section 523(a)(6), thus, is condensed into a single inquiry of whether there exists "either an objective substantial certainty of harm or a subjective motive to cause harm" on the part of the debtor. *[Miller,* 156 F.3d at 606]. *See also Texas v. Walker,* 142 F.3d 813, 823 (5th Cir.1998) (stating "'for willfulness and malice to prevent discharge under Section 523(a)(6), the debtor must have intended the actual injury that resulted.' . . . 'Intent to injure may be established by showing that the debtor intentionally took action that necessarily caused, or was substantially certain to cause, the injury.'")(citing *In re Delaney,* 97 F.3d 800, 802 (5th Cir.1996)).

*In re Williams*, 337 F.3d at 509.

Consequently, under Fifth Circuit jurisprudence, an injury is *willful and malicious* when there is "either an objective substantial certainty of harm or a subjective motive to cause harm." *Miller*, 156 F.3d at 606.

In the Complaint, the only reference to § 523(a)(6) is: "The Plaintiffs are entitled to have their judgment amount be declared to be non-dischargeable, pursuant to 11 U.S.C. § 523(a)(6)."[32] Attached to the Complaint is a copy of the Assignment and Build-Out Agreement. No other exhibits are attached.

In the Motion, the Debtor does not specifically cite to § 523(a)(6). In support of his claim that summary judgment in his favor is proper, the *Affidavit* of Douglas G. Broome (Broome

---

[32]*Complaint Objecting to Dischargeability of Debt or in the Alternative, to the Discharge of Debtor*, Adv. Dkt #1, unnumbered page 4 of 5 (Oct. 4, 2011).

Affidavit) and the *Affidavit* of the Debtor (Debtor Affidavit) are attached.  In the Broome Affidavit, Broome states that he was the majority member and that the Debtor was a minority member of all of the companies he and the Debtor owed.  Further, Broome states that the Debtor did not have independent decision making authority for any of the entities and that the Debtor never made any representations to Westwood "concerning my opinions on the value of the Purvis Porches project or the Deed of Trust which Cornerstone held on the Purvis Porches land."[33]

In the Debtor Affidavit, the Debtor states that he was a minority member and that he did not have the authority to speak on behalf of Cornerstone or any other entity.  The Debtor states that he never made any representations to Westwood "regarding the working capital of Cornerstone or myself individually.  I never made any representations to . . . any Westwood representative relating to how the loan proceeds would be used, as I knew that Doug Broome would be in control of the use of the proceeds."[34]

In the Debtor's Brief, the Debtor alleges that "absolutely no evidence was presented by Plaintiffs in the three days of trial in the Broome adversary proceeding that [the Debtor] or Mr. Broome willfully or maliciously injured Plaintiffs.  Plaintiffs have no evidence to support such a claim."[35]

In its Answer, Westwood does not specifically address § 523(a)(6).  As for the arguments in Westwood's Brief, the Court is not entirely clear exactly what Westwood is asserting.  It appears that

---

[33]*Defendant Matthew J. Pellerin's Motion for Summary Judgment,* Adv. Dkt. #45, Exhibit A, p. 3 (April 29, 2016).

[34]*Id.* Exhibit B, p. 2.

[35]*Defendant Matthew J. Pellerin's Memorandum in Support of Motion for Summary Judgment*, Adv. Dkt. #46, p. 12 (April 29, 2016).

Westwood is arguing that the Debtor had the duty to cite to specific part(s) of the record to prove that the Debtor did not commit a willful and malicious injury to Westwood.

As stated previously, as the moving party, the Debtor's burden was to show "the . . . court that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)." *Hart,* 343 F.3d at 764. Then, the non-moving party "must submit or identify evidence in the record to show the existence of a genuine issue of material fact as to each element of the cause of action." *Malacara,* 353 F.3d at 404. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita,* 106 S. Ct. at 1356 (citations omitted).

In reviewing the record as a whole, the Court finds that it could not rationally find that the Debtor had committed a malicious and willful injury to Westwood as contemplated under § 523(a)(6). None of the exhibits attached to Westwood Brief or the Complaint show where the Debtor committed an act "with either an objective substantial certainty of harm or a subjective motive to cause harm." *Miller*, 156 F.3d at 606. Accordingly, the Court finds that summary judgment should be granted in favor of the Debtor as to § 523(a)(6).

### F.  § 523(a)(2)(A)

Section 523(a)(2)(A) excepts from discharge "any debt. . .for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;" 11 U.S.C. § 523(a)(2)(A).

As a general matter, the three grounds for non-dischargeability under § 523(a)(2)(A) are similar. Section 523(a)(2)(A)

> "contemplates frauds involving 'moral turpitude or intentional wrong; fraud implied in law which may exist without imputation of bad faith or immorality, is insufficient.'" *Allison v. Roberts (In re Allison),* 960 F.2d 481, 483 (5th Cir.1992) (footnote omitted) (quoting 3 *Collier on Bankruptcy* ¶ 523.08[4], at 523–50 (Lawrence P. King et al. eds., 15th ed. 1989)); *see also First Nat'l Bank v. Martin (In re Martin),* 963 F.2d 809, 813 (5th Cir.1992) ("Debts falling within section 523(a)(2)(A) are debts obtained by frauds involving moral turpitude or intentional wrong, and any misrepresentations must be knowingly and fraudulently made.").

*RecoverEdge L.P. v. Pentecost,* 44 F.3d 1284, 1291 (5th Cir. 1995).

In the Fifth Circuit, the elements of *false pretenses and false representations* are distinguished from the elements of *actual fraud. Id* at 1292. "The distinction recognized by the Fifth Circuit appears to be a chronological one, resting upon whether a debtor's representation is made with reference to a future event, as opposed to a representation regarding a past or existing fact." *Boyington Capital Group, LLC v. Haler (In re Haler*), Case No. 10-42052, Adv. No. 10-4217, 2016 WL 825668, at *13 (Bankr. E.D. Tex. Mar. 2, 2016) (footnotes omitted). Under § 523(a)(2) the "false representations and false pretenses [must] encompass statements that falsely purport to depict *current or past facts*. [A debtor's] promise ... related to [a] *future action* [which does] not purport to depict current or past fact ... therefore cannot be defined as a *false representation or a false pretense.*" *Matter of Bercier*, 934 F.2d 689, 692 (5th Cir. 1991)

In order for Westwood to prevail under § 523(a)(2)(A) for *false pretenses* or *false representations*, Westwood "must prove by a preponderance of the evidence that the debtor made representations that were (1) knowing and fraudulent falsehoods, (2) describing past or current facts, (3) that were relied upon by the other party." *Id.*

In order for Westwood to prevail under § 523(a)(2)(A) for *actual fraud*, Westwood must submit proof that "(1) the debtor made representations; (2) the debtor knew were false at the time

they were made; (3) the debtor made the representations with the intention and purpose to deceive the creditor; (4) the creditor relied on the representations; and (5) the creditor sustained losses as a proximate result of the representations. *RecoverEdge L.P. v. Pentecost,* 44 F.3d 1284, 1293 (5th Cir. 1995)" *In re Hann,* 544 B.R. at 331.

On May 16, 2016, the United States Supreme Court issued *Husky Int'l Electronics, Inc. v. Ritz,* — U.S. —, 136 S.Ct. 1581 (2016) in which it clarified the standards for *actual fraud.* In *Husky,* the debtor transferred large sums of Chrysalis Manufacturing Corporation's money to other entities he controlled. A creditor of Chrysalis Manufacturing Corporation argued that these inter-company transfers constituted *actual fraud* under § 523(a)(2)(A). The Supreme Court agreed and held that *actual fraud* under § 523(a)(2)(A), "encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation." *Husky,* 136 S.Ct. at 1586. "To the extent that *In re Acosta, RecoverEdge*, and other prior Fifth Circuit cases required that a debtor make a representation in order for a debt to be nondischargeable under § 523(a)(2)(A), those cases are effectively overruled by the Supreme Court's decision in this case. *Husky,* 136 S.Ct. at 1586."[36]

In the Complaint, the only reference to § 523(a)(2)(A) is: "The Plaintiffs are entitled to have their judgment amount be declared to be non-dischargeable, pursuant to 11 U.S.C. § 523(a)(2)(a) *[sic]*."[37] Attached to the Complaint is a copy of the Assignment and Build-Out Agreement. No other exhibits are attached.

In neither the Complaint nor the Answer does Westwood specify under which ground or

---

[36]*Husky Int'l Electronics, Inc. v. Ritz (In re Ritz)*, 832 F.3d 560, 566, n.3 (5th Cir. 2016).

[37]*Complaint Objecting to Dischargeability of Debt or in the Alternative, to the Discharge of Debtor,* Adv. Dkt. #1, unnumbered page 3 of 5 (Oct. 4, 2011).

grounds of § 523(a)(2)(A) it is proceeding. In Westwood's Brief, other than a blanket statement citing the three grounds under § 523(a)(2)(A),[38] Westwood does not specify under which ground or grounds of § 523(a)(2)(A) it is proceeding. In reading Westwood's Brief, it is not any clearer to the Court whether Westwood is proceeding under a false pretense/false representation or actual fraud.

Since the Court is unclear as to which ground Westwood is proceeding under § 523(a)(2)(A), the Court cannot determine whether a dispute as to a material fact exists. As noted, Judge Samson found $102,024.72 of the $360,000.00 to be nondischargeable as actual fraud under § 523(a)(2)(A), and while the Court finds Judge Samson's findings as to actual fraud to be very persuasive, the Court cannot give preclusive effect to her findings. Consequently, the Court finds that summary judgment will be denied as to § 523(a)(2)(A). The Court will set the issue of the dischargeability of Westwood's debt as to § 523(a)(2)(A) for trial.

## CONCLUSION

Since Buchanan is not a creditor of the Debtor, Buchanan does not have standing to bring any action against the Debtor. Consequently, the Motion will be granted and a judgment as a matter of law will be entered in favor of the Debtor as to any claims of Buchanan.

As for § 523(a)(4), Westwood conceded that the grounds for holding the debt nondischargeable pursuant to § 523(a)(4) do not exist. Consequently, the Motion will be granted and a judgment as a matter of law will be entered in favor of the Debtor as to § 523(a)(4).

As for § 523(a)(2)(B) and § 523(a)(6), in order to defeat a motion for summary judgment, Westwood had to "submit or identify evidence in the record to show the existence of a genuine issue

---

[38] *Plaintiffs' Memorandum in Support of the Response to Defendant Matthew Pellerin's Motion for Summary Judgment,* Adv. Dkt. #49, unnumbered page 4 of 15 (May 23, 2016).

of material fact as to each element of the cause of action." *Malacara,* 353 F.3d at 404.  Westwood

has not shown the existence of any "disputes over facts that might affect the outcome of the suit

under the governing law [in order to] properly preclude the entry of summary judgment." *Anderson,*

477 U.S. at 248.  Applying these summary judgment standards, the Court finds that the Debtor has

not shown a genuine dispute as to any material fact which would allow a "reasonable jury [to] return

a verdict for the non-moving party" *Id.* as to § 523(a)(2)(B) and § 523(a)(6).  Consequently, the

Motion will be granted and a judgment as a matter of law will be entered in favor of the Debtor as

to § 523(a)(2)(B) and § 523(a)(6).

Judge Samson tried the issue of § 523(a)(2)(A) in the Broome Adversary over a three (3) day

period, and eventually found that $102,024.72 had been improperly spent by the parties and was

nondischargeable.  The Court will note that while issue preclusion did not apply to prohibit the

relitigation of Westwood's claim as to § 523(a)(2)(A), the Court did find Judge Samson's findings

to be very persuasive and specific as to the amount of money the parties improperly spent.   Since

the Court is unclear whether Westwood is proceeding under false pretenses, false representations

and/or actual fraud, the Court finds that the Motion should be denied and that the issue of the

dischargeability of the $360,000.00 pursuant to § 523(a)(2)(A) should be set for trial.

To the extent the Court has not addressed any of the parties' other arguments or positions,

it has considered them and determined that they would not alter the result.

A separate judgment consistent with this opinion will be entered in accordance with Rule

7054 of the Federal Rules of Bankruptcy Procedure.

**##END OF OPINION##**